STATE of Iowa, Appellee,

v.

Frederick Louis PLETKA, a/k/a Fred
Drappeaux, Appellant.

No. 62518.

Supreme Court of Iowa.

Sept. 23, 1981.

Robert L. Sikma of Sikma & Gilbert, Sioux City, for appellant.

Thomas J. Miller, Atty. Gen., Shirley Ann Steffe, Asst. Atty. Gen. and Richard L. McCoy, Asst. County Atty., for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, HARRIS, McCORMICK and ALLBEE, JJ.

McCORMICK, Justice.

Defendant Frederick Louis Pletka appeals from his convictions by jury and sentences for murder in the first degree in violation of sections 690.1 and 690.2, The Code 1977, and manslaughter in violation of section 690.10, The Code 1977. He contends the court erred in an evidentiary ruling, in

instructing the jury and in overruling his motion for new trial. We find no merit in these contentions and therefore affirm the trial court.

The State filed county attorney informations charging defendant with murder of Robert Schmeckpepper and James King. The charges arose from the stabbing deaths of the two men in their Sioux City trailer home during the night of October 6, 1977. Defendant admitted killing the men but raised defenses of alcohol-induced diminished responsibility and self-defense. He was convicted of first-degree murder in the death of Schmeckpepper and manslaughter in the death of King. This appeal followed.

I. *The evidentiary ruling.* The State called police officer Boyd Spaulding to testify about duplicating a tape recording of defendant's alleged confession to furnish a copy to defense counsel before trial. On cross-examination defense counsel asked the witness on what date he made the copy. Spaulding said he did it March 9, 1978. Defense counsel then said, "Did you conduct any further investigation in this case?" The witness said he did not. The defense attorney then sought to question him about an interview he had with decedent King's employer on October 6, 1977, the date of the slayings. The court sustained a State objection that the inquiry was beyond the scope of direct examination.

At this point the defense sought to introduce a copy of a report prepared by Spaulding after the October 6 interview. Counsel said the report was offered as a prior inconsistent statement of Spaulding and as proof of King's reputation for violence. The court sustained the State's objection to the exhibit. Even though defendant now urges a third theory of admissibility, we will address only the two grounds on which he preserved error.

■ The police report itself would not constitute a prior inconsistent statement. No foundation was laid to show that Spaulding denied anything in the report. Nor was the foundation adequate to show the officer denied making the report. His attention was not called to it, and he was not given an opportunity to admit or deny making it. *See State v. Hill,* 243 N.W.2d 567, 570 (Iowa 1976). Although he denied making "further investigation" in the case, he may well have thought counsel was referring to the period after March 9, 1978. The court did not err in refusing the offer of the exhibit as impeachment.

■ Similarly, defendant did not lay a foundation for use of the report as character evidence. It was hearsay, contained hearsay, referred to irrelevant matters, and did not constitute reputation or character evidence under the criteria delineated in *State v. Jacoby,* 260 N.W.2d 828, 836–39 (Iowa 1977). Moreover, defendant later called Spaulding as his own witness, and Spaulding testified to substantially everything in the report.

II. *Felony-murder instructions.* It was the State's theory that defendant committed the murders in the perpetration of robbery. The jury was instructed on the felony-murder theory of first-degree murder. Defendant contends the evidence was insufficient to support submitting the issue. He also contends the instructions misstated the law. Because defendant was convicted of first-degree murder only in the killing of Schmeckpepper, this assignment affects only that conviction.

■ A. *Sufficiency of evidence.* In alleging the evidence was insufficient to show he intended to rob the victims at the time of the killings, defendant relies on his version of the events. The jury, however, was not obliged to believe his testimony. *State v. Veverka,* 271 N.W.2d 744, 748 (Iowa 1978). He admits stealing money and King's automobile but claims he did so after having killed the men in self-defense. Apart from other issues affecting defendant's credibility, the jury may have questioned whether Schmeckpepper was killed in self-defense when defendant admitted he walked into the victim's bedroom with a knife, observed him bent over the foot of his bed with his back toward defendant, stabbed him in the back, and, after killing him by additional stabbings, carved an "X" in his back.

It was necessary for the State to prove the victims were murdered "in the perpetration or attempt to perpetrate ... robbery...." § 690.2, The Code 1977. *See State v. Connor*, 241 N.W.2d 447, 464 (Iowa 1976). The jury could find from the circumstantial evidence that defendant intended to rob the victims at the time he killed them. The State was not required to prove the property was taken before the alleged murders. *See State v. Millspaugh*, 257 N.W.2d 513 (Iowa 1977); *State v. Hall*, 214 N.W.2d 205 (Iowa 1974). We hold that the evidence was sufficient for submission of the case under the State's felony-murder theory.

■ B. *Correctness of the instructions.* Under section 690.2, now repealed, the perpetration of the felony could not enhance mere killings into first-degree murder. Instead it would elevate second-degree murder to first-degree murder. *See Conner*, 241 N.W.2d at 463 (Iowa 1976). Like the instructions in *State v. Galloway*, 275 N.W.2d 736 (Iowa 1979), the instructions in this case did not make this distinction.

Defendant did not raise this question by objection to the court's instructions at any time in the trial court. He asserts he is excused from doing so because *Galloway* changed the law. He cites *State v. Wisniewski*, 171 N.W.2d 882 (Iowa 1969), as support for his assertion. He is wrong, however, in contending *Galloway* changed the law. Besides *Conner*, other cases interpreted section 690.2 and its predecessors similarly before the present case was tried. *E. g., Millspaugh*, 257 N.W.2d at 516; *State v. Nowlin*, 244 N.W.2d 596, 604 (Iowa 1976); *State v. Campbell*, 217 Iowa 848, 853–54, 251 N.W. 717, 719 (1933). The present case does not require an interpretation of section 707.2(2), The Code 1981.

Defendant is barred from challenging the felony-murder instructions because of his failure to preserve error.

III. *Instructing on character evidence.* Defendant contends the court erred in refusing to give his requested instruction on character evidence. His theory of self-defense was that he killed the victims in defending himself against homosexual rape. He introduced evidence that the victims were reputed to be homosexual and heavy drinkers. He also adduced evidence that King had been involved in prior altercations. This evidence, however, fell far short of supporting an instruction relating to the victims' character.

■ Evidence of a decedent's character is ordinarily inadmissible. *See* McCormick, Evidence § 188 (2d ed. E. Cleary 1972). However, the violent, quarrelsome, dangerous or turbulent character of a decedent may be shown in support of a claim of self-defense. When the accused knew of the traits, the evidence bears on his state of mind. Even if the accused did not know of the traits, the evidence bears on the aggression issue. General principles are reviewed and discussed in *Jacoby*, 260 N.W.2d at 836–38.

■ All of the evidence which defendant relies upon either related to other character traits or disclosed specific acts rather than character. If proper objection had been made, it would not have been admissible as character evidence. The closest the evidence came to proving the relevant traits was testimony by a police officer that a bartender told him King became "very obnoxious" when intoxicated and testimony by a neighbor that Schmeckpepper also became obnoxious when intoxicated, "[n]ot to a great extent but to a certain point." A person can be obnoxious without being violent, quarrelsome, dangerous or turbulent. Although there was evidence King and Schmeckpepper were intoxicated when they were killed, the character evidence was not substantial. The trial court did not err in refusing to give the requested instruction.

■ IV. *Instructing on intent.* Defendant failed to preserve error on his present contention that the court's general instruction on intent should have been tailored to address the issue of his intoxication. Nor does his reliance on *State v. Wisniewski* aid his position. No change in law is involved. Furthermore, the issue he believes should

have been discussed in the intent instruction was adequately covered in other instructions.

■ V. *Instructing on flight.* Defendant alleges the court erred in failing to amplify its instruction on his flight from the scene. He urged this objection for the first time in his motion for new trial. This case was tried before the decision in *State v. Rouse*, 290 N.W.2d 911, 915 (Iowa 1980). However, his objection was too late even under prior law. *See State v. Brown*, 172 N.W.2d 152, 159–60 (Iowa 1970).

VI. *The motion for new trial.* Defendant contends his motion for new trial should have been sustained on three grounds. The first is the alleged failure of the State to disclose exculpatory evidence despite a blanket pretrial order directing it to do so. The second ground is newly discovered evidence. The third ground is the alleged insufficiency of evidence to support his conviction of first-degree murder in the killing of Schmeckpepper.

A. *Exculpatory evidence.* Defendant learned after his conviction about a police investigative report concerning a burglary of the victims' trailer in December 1976. The report disclosed that Norman LaFave was the prime suspect in the burglary. On a prior occasion, according to the report, LaFave had been in the trailer with a pistol which Schmeckpepper took from him and later returned to him. Defendant asserts this evidence showed the victims had access to a gun at the time of the events involved in the present case.

■ The evidence does not have the probative value asserted by defendant. It was plainly not materially exculpatory evidence under the standard in *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). *See State v. Love*, 302 N.W.2d 115, 123 (Iowa 1981). Other evidence introduced at trial tended to show King owned a .22 caliber target pistol. Moreover, even if the evidence tended to show the victims had access to a weapon at the time involved here, defendant's self-defense claim was not dependent upon that

question. He based his defense on alleged fear that they might have a weapon. The accuracy of his fear was not an issue. *See State v. Johnson*, 298 N.W.2d 293, 296 (Iowa 1980).

■ B. *Newly discovered evidence.* Defendant met LaFave while in jail after his conviction. LaFave told him about the 1976 gun incident with King and Schmeckpepper. He also told defendant of specific acts reflecting on the victims' character. LaFave testified in a deposition that he left the pistol in the trailer and that it was shown to him by the police in an interrogation conducted after the killings. Police witnesses disputed that portion of LaFave's testimony. LaFave himself acknowledged that if he picked up his gun from the trailer he probably lost it.

Defendant contends that the police report and LaFave's testimony constitute newly discovered evidence justifying a new trial. Governing principles are discussed in *State v. Sims*, 239 N.W.2d 550, 554–55 (Iowa 1976). Applying those principles here, we hold that the trial court did not abuse its discretion in overruling the new trial motion on this ground. The court could find, as it did, that the evidence was not material, was in most respects merely cumulative, and would probably not change the result if a new trial were granted.

■ C. *Sufficiency of the evidence.* Two theories of first-degree murder were submitted to the jury. One was the felony-murder theory and the other was based on the usual first-degree murder elements.

We have already held that the evidence was sufficient to support submission of the case on the felony-murder theory. We also think the evidence was sufficient on the alternative basis. Even though defendant insists evidence of his intoxication negated his capacity to entertain the mental elements of first-degree murder, the jury was not bound to so find. *See, e. g., State v. Winfun*, 261 N.W.2d 484, 486 (Iowa 1978).

Substantial evidence existed from which the jury could find defendant killed Schmeckpepper deliberately, after premedi-

tation, and with specific intent to kill. *See State v. Harrington*, 284 N.W.2d 244, 247 (Iowa 1979).

The trial court did not err in overruling defendant's motion for new trial on the grounds asserted.

We have considered all of defendant's contentions and arguments, whether specifically addressed or not, and find them without merit.

AFFIRMED.