STATE of Iowa, Appellee,

v.

The WOLFORD CORPORATION,
Appellant.

No. 03–1726.

Supreme Court of Iowa.

Dec. 3, 2004.

John P. Roehrick of Roehrick, Krull & Blumberg, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Sharon K. Hall, Assistant Attorney General, John P. Sarcone, County Attorney, and Lawrence E. James, Assistant County Attorney, for appellee.

WIGGINS, Justice.

The district court affirmed the associate district court's criminal conviction of The Wolford Corporation (Wolford) for failing to timely file two real estate contracts in violation of Iowa Code section 558.46(1) (2001). Because we agree with the district court that a violation of section 558.46(1) is a public offense punishable through criminal prosecution, and the execution of a second contract covering the same real estate transaction as the original contract did not extinguish Wolford's obligation to record the original contract, we affirm the judgment of the district court.

## I. Background Facts and Procedure.

On April 26, 2001, Doreen Johnson entered into a real estate contract with Rachel N. Nelson as Trustee for the Medinoski Trust (Trust) for the purchase of a home located in Des Moines. On June 27, 2002, Johnson signed another contract concerning the same property with the Trust, which included the same terms and conditions as the original contract but with a

lower interest rate. Under the terms of both contracts, the Trust had the obligation to file a "memorandum of interest" with the county recorder evidencing Johnson's interest in the property. The Trust did not file the original contract or a memorandum of the original contract with the recorder's office for recording. The Trust filed the second contract on January 29, 2003, for recording.

On February 24, 2003, the State issued a citation against the Trust[1] for failing to timely record the June real estate contract within 180 days from the date the parties signed the second contract as mandated by Iowa Code section 558.46(1) and (2). Because the Trust recorded the second contract 216 days after the date of signing, the county attorney charged the Trust with thirty-six simple misdemeanor counts, one count for each day the Trust did not file the contract for recording after the expiration of the 180–day grace period. The State later filed an amended complaint asserting an additional 246 simple misdemeanor counts based on the Trust's and Wolford's failure to record the original contract. The 246 counts represented each day the Trust and Wolford failed to file the original contract with the recorder calculated from the expiration of the 180–day grace period to the date the parties executed the second contract. In total, the State charged the Trust and Wolford with 282 simple misdemeanor counts. Without objection, the court later substituted Wolford as the proper defendant on all counts.

Wolford entered a plea of not guilty and argued a violation of section 558.46 is subject to a civil penalty rather than a criminal fine, and the second contract had extinguished any recording violations under the original contract. The associate district court concluded Wolford's failure to timely record the real estate contracts was punishable as a criminal misdemeanor. The court, however, found Wolford guilty of just one count of failure to record a real estate contract pursuant to section 558.46. The court fined Wolford $5 per day for each of the 282 days that the contracts went unrecorded, plus a thirty percent surcharge. The district court affirmed the decision of the associate district court. Wolford filed a petition for discretionary appeal, which this court granted.

## II. Issues.

This discretionary appeal involves two issues: (1) whether a violation of Iowa Code section 558.46 constitutes a public offense punishable through criminal prosecution, and (2) whether execution of the second contract extinguished Wolford's statutory obligation to record the original contract.

## III. Scope of Review.

■ Our review is for correction of errors at law because Wolford's contentions raise a question of statutory interpretation. *State v. Kress*, 636 N.W.2d 12, 17 (Iowa 2001); *State v. Ceron*, 573 N.W.2d 587, 589 (Iowa 1997).

## IV. Is the Violation of Iowa Code Section 558.46 a Public Offense Punishable Through Criminal Prosecution?

■ There are no common-law crimes in this state. *State v. Campbell*, 217 Iowa 848, 853, 251 N.W. 717, 719 (1933). The legislature defines criminal acts by statute. *State v. Di Paglia*, 247 Iowa 79, 84, 71 N.W.2d 601, 604 (1955). It is not essential for a criminal statute to include language that the violation of the statute constitutes a misdemeanor or felony. *Bopp v. Clark*, 165 Iowa 697, 701, 147 N.W. 172, 174 (1914). The legislature

1. The Trust had entered into a management agreement with Wolford under which Wolford was responsible for the contract, including its recording.

has criminalized affirmative acts. *See, e.g.,* Iowa Code § 707.1 (criminalizing murder as killing another with malice aforethought); *id.* § 714.1(1) (criminalizing theft as taking possession of another's property with the intent to deprive the other thereof); *id.* § 716.1 (criminalizing criminal mischief as intentionally damaging property by one who has no right to do so). The legislature has also criminalized omissions. *See, e.g., id.* § 422.25(5) (criminalizing the failure to file a tax return as a fraudulent practice); *id.* § 692A.7 (criminalizing the failure to register as a sex offender). The penalty for a criminal act may be incarceration. *See, e.g., id.* § 902.1 (stating the penalty for a class "A" felony is life in prison). The penalty may only be a fine. *See, e.g., id.* § 805.8 (listing scheduled fines for motor vehicle violations). In some instances, the penalty may include both incarceration and a fine. *See, e.g., id.* § 902.9(4) (stating the penalty for a class "C" felony includes confinement and a fine). The fine may be in a fixed amount for the specified violation. *See, e.g., id.* § 805.8(2)(*a*) (requiring a twenty dollar fine for certain parking violations). For other violations, the fine may be a per diem amount for each day the violation persists. *See, e.g., id.* § 455B.146A (stating knowingly violating a provision of division II of chapter 455B is an aggravated misdemeanor punishable by a fine of not more than ten thousand dollars for each day of violation). In other words, the legislature can draft a criminal statute in any form. It need not use any special language to criminalize an act. It may criminalize commissions or omissions and provide for a variety of penalties for a violation of a criminal statute.

██ To decide whether a violation of Iowa Code section 558.46 is a public offense punishable through a criminal prosecution, we must determine the legislative intent when the legislature adopted it. *See Clinton Cmty. Sch. Dist. v. Anderson,* 322 N.W.2d 73, 75–76 (Iowa 1982). "We determine legislative intent from the words chosen by the legislature, not what it should or might have said." *Auen v. Alcoholic Beverages Div.,* 679 N.W.2d 586, 590 (Iowa 2004).

Iowa Code section 558.46 provides in relevant part:

1. Every real estate installment sales contract transferring an interest in residential property shall be recorded by the contract seller with the county recorder in the county in which the real estate is situated not later than one hundred eighty days from the date the contract was signed by the contract seller and contract purchaser.

2. Failure to record a real estate contract required to be recorded by this section by the contract seller within the specified time limit *is punishable by a fine* not to exceed one hundred dollars per day for each day of violation. The county recorder shall record a real estate contract presented for recording even though not presented within one hundred eighty days of the signing of the contract. The county recorder shall forward to the county attorney a copy of each real estate contract recorded more than one hundred eighty days from the date the contract was signed by the contract seller and contract purchaser. The county attorney shall initiate action in the district court to enforce the provisions of this section. Fines collected pursuant to this subsection shall be deposited in the general fund of the county.

Iowa Code § 558.46(1), (2) (2003) (emphasis added).

██ By the legislature's use of the language "punishable by a fine" in section

558.46(2), we believe the legislature intended a violation of section 558.46(1) to be a criminal act. In the absence of a legislative definition, we give words their plain and ordinary meaning. *Lauridsen v. City of Okoboji Bd. of Adjustment,* 554 N.W.2d 541, 544 (Iowa 1996). The dictionary defines a "fine" as "**2a:** a sum formerly paid as compensation or for exemption from punishment but now imposed as punishment for a crime—distinguished from forfeiture and penalty." *Webster's Third New International Dictionary* 852 (unabr. ed. 2002). Ordinary legal phraseology considers a "fine" as

> pecuniary punishment which may be legally imposed or assessed only by a lawful tribunal in a case wherein it has jurisdiction, properly invoked, of the offense charged and of the person of the accused. It is the sentence pronounced by the court for the violation of a criminal law, the amount of which may be fixed by law or left in the discretion of the court.

*Marquart v. Maucker,* 215 N.W.2d 278, 282 (Iowa 1974). Finally, the legislature defines a "public offense" as "that which is prohibited by statute and is *punishable by fine* or imprisonment." Iowa Code § 701.2 (emphasis added). These definitions indicate the legislature intended to make a violation of section 558.46 a public offense punishable through criminal prosecution when it used the phrase "punishable by a fine."

Additionally, the legislature expresses its intent by omission. *N. Iowa Steel Co. v. Staley,* 253 Iowa 355, 357, 112 N.W.2d 364, 365 (1961). The Code is replete with statutes specifically labeling the violation of a statute as a "civil fine" or "civil penalty." *See, e.g.,* Iowa Code § 9H.4(11) (providing for a "civil penalty" for a violation of the statute regulating the ownership of farmland); *id.* § 123.135(5) (providing for a "civil penalty" for a violation of chapter 123); *id.* § 135.105A(4) (providing for a "civil penalty" for failure to complete a training program prior to performing a lead abatement or inspection); *id.* § 142B.6 (providing for a "civil penalty" for smoking in a prohibited area); *id.* § 490.1502(4) (providing for a "civil penalty" for a foreign corporation transacting business in Iowa without a certificate of authority). Had the legislature intended the violation of section 558.46(1) to constitute a civil infraction, it would have used the term "civil penalty" or "civil fine" in section 558.46(2).

Wolford asserts because section 558.46(2) requires the fine "shall be deposited in the general fund of the county," a violation of section 558.46(2) is a civil infraction. It bases its assertion on section 666.3, which provides:

> Fines and forfeitures, after deducting court costs, court expenses collectible through the clerk of the court, and fees of collection, if any, and not otherwise disposed of, shall be paid to the treasurer of state for deposit in the general fund of the state.

*Id.* § 666.3. It argues the fine under section 558.46(2) cannot be a criminal fine because it is not payable to the general fund of the State. Wolford believes *Anderson* supports its position.

■ In *Anderson,* we held the intent of the legislature as evidenced by the language it used in a statute is determinative of whether a violation of the statute is a criminal act or civil infraction. 322 N.W.2d at 75–76. Only after we determined the legislature intended a violation of the environmental quality statute to be a civil infraction because of the language it used, did we consider to whom the fine was payable. *Id.* at 76. Thus, *Anderson* does not stand for the proposition that the entity to whom a fine is payable deter-

mines the nature of a statute. To the contrary, whether the violation of a statute is a criminal act or civil infraction does not turn on who receives the fine. The legislature has enacted statutes that provide for the payment of civil penalties to a variety of entities. *See, e.g.,* Iowa Code § 125.135(5) (providing for the civil fines collected under this section be retained by the alcoholic beverage division); *id.* § 142B.6 (providing for the civil penalty to be deposited in the county treasury); *id.* § 216.15A(11)(*d*) (providing for the civil penalty to be deposited in the general fund).

In summary, the intent of the legislature as determined by the language it used determines whether a violation of section 558.46 is a public offense punishable through criminal prosecution, not the entity that receives the fine. For all these reasons, we are convinced the district court was correct when it concluded the legislature intended a violation of section 558.46(1) to be a criminal act, rather than a civil infraction.

## V. Did the Execution of the Second Contract Extinguish Wolford's Statutory Obligation to Record the Original Contract?

■ Wolford argues the parties substituted the second contract for the original contract; thus, Wolford concludes it is only liable for its failure to record the second contract making it responsible for a fine of thirty-six days, the days the second contract went unrecorded as required by the statute. Wolford is correct in its conclusion that the second contract replaced and extinguished the parties' rights and obligations under the original contract. " '[P]arties to a valid contract may rescind or abandon it, or substitute another in its place, or by conduct inconsistent with the continued existence of the original contract estop themselves from asserting any right

thereunder.' " *Recker v. Gustafson,* 279 N.W.2d 744, 755 (Iowa 1979) (citations omitted). Further, when the parties substitute a later contract for an earlier contract, the later contract extinguishes the contractual obligations of the earlier contract. *See, e.g., Klipp v. Iowa Grain Indem. Fund Bd.,* 502 N.W.2d 9, 11 (Iowa 1993). Wolford is incorrect, however, when it concludes the execution of the second contract retroactively extinguished its obligation to file the original contract.

■ The purpose of recording a real estate contract is to give third persons notice of the seller's and buyer's respective interests in the real estate created by the contract. Recording allows third persons to file real estate liens against the appropriate party when authorized by law and to determine the status of the title before entering into a transaction involving the property. Additionally, recording the contract allows for judgment liens and other statutory liens to automatically attach to a person's interest in the real property when permitted by law. *See, e.g.,* Iowa Code § 624.23 (providing for a judgment lien to automatically attach to the real property of a defendant at the time the judgment is rendered); *id.* § 364.13A (providing for the automatic attachment of a lien for a special assessment against real property benefited by the special assessment).

■ An additional legislative purpose of section 558.46(1) is to protect a buyer's interest in the real property covered by the contract. A judgment or statutory lien, which by law is a charge against the seller's real property, cannot defeat the buyer's interest under a real estate contract if the seller properly records the contract as required by section 558.46(1). Additionally, recording facilitates the buyer when he or she seeks conventional financing for the property, and gives notice to the buyer's heirs of the buyer's interest

in the property upon the buyer's death. Finally, if the seller properly records the contract as required by section 558.46(1), the seller is unable to resell the property or divest the buyer's interest in the property without first following the legal requirements for the forfeiture of the contract. *See* Iowa Code ch. 656.

The original contract gave Johnson an interest in the real property. Recording the original contract was essential to protect Johnson's interest in the property created by the original contract. Although the second contract extinguished the rights between the parties created by the original contract, Wolford's failure to timely record the original contract left Johnson vulnerable to claims by third parties who did not receive notice of her interest in the property created by the original contract. Wolford's failure to timely record the original contract also would have allowed Wolford to resell the property to a good-faith purchaser, even though Johnson had a valid interest in the property. Accordingly, we agree with the district court that the parties' execution of the second real estate contract did not extinguish Wolford's prior obligation under section 558.46(1) to record the original contract.

## VI. DISPOSITION.

Because we agree with the district court that a violation of Iowa Code section 558.46(1) is a public offense punishable through criminal prosecution and the execution of a second contract did not retroactively extinguish Wolford's obligation to record the original contract, we affirm the judgment of the district court.

**AFFIRMED.**

All justices concur except LARSON and CADY, JJ., who dissent.

LARSON, Justice (dissenting).

I dissent because section 558.46 does not clearly provide for criminal, as opposed to civil, punishment. In such a case, doubts must be resolved in favor of the defendant. *See Rewis v. United States,* 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493, 497 (1971) ("[A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.").

The majority holds that section 558.46(2) is a criminal provision because it uses the word "fine." While use of the word "fine" is probative, it is not determinative. 36A C.J.S. *Fines* § 2, at 206 (2003) ("[T]he terms 'fine' and 'penalty' are often used synonymously, and there is authority that the term 'fine' is broad enough to include penalties for the violation of law which are recoverable in civil actions even though such violation is made neither a misdemeanor nor a felony." (Footnotes omitted.)); *see also State ex rel. Howell County v. W. Plains Tel. Co.,* 232 Mo. 579, 135 S.W. 20, 21–22 (1911) (finding that a statute was not criminal, even though the statute used the word "fine," because it contained many other characteristics more consistent with civil penalties); *State v. Johnson,* 1 Or.App. 363, 462 P.2d 687, 689–90 (1969) (holding that a statute was not criminal, even though it imposed a "fine" on any political candidate who belatedly filed a statement of campaign contributions).

Ultimately, when determining for the first time whether a statute imposes civil or criminal sanctions, "we must seek out and give effect to the intention of the legislature...." *Lenertz v. Mun. Ct.,* 219 N.W.2d 513, 515–16 (Iowa 1974) (holding—after considering the statute's whole text, legislative history, and purpose—that a consumer fraud provision did not impose criminal sanctions); *see* 36A C.J.S. *Fines* § 2, at 206 ("The true significance of [the

term 'fine'], when used in a statute or constitution, must be ascertained according to the ordinary methods of interpretation."). In this case, I believe the legislature used the word "fine" in its broad sense: simply "a payment extracted by the government and payable to the government." *Coleman v. Watt,* 40 F.3d 255, 263 (8th Cir.1994). This definition, without further clarification, could apply to a civil forfeiture as well as a criminal punishment.

It is true, as the majority concludes, that our laws have criminalized acts of *omission* as well as *commission.* However, even the omission-crime statutes cited by the majority clearly state they are crimes. For example, Iowa Code section 422.25(5) makes failure to file a tax return a fraudulent practice. Fraudulent practices in turn are declared to be simple misdemeanors to class "C" felonies under Iowa Code sections 714.9–.13. Similarly, failure of a sex offender to register is stated by section 692A.7 to be an aggravated misdemeanor to a class "D" felony, depending on the number of offenses. In contrast, section 558.46(2) does not say what level of "crime" it is (e.g., simple or aggravated misdemeanor) or that a violation is a crime at all.

Another important factor in determining whether this is civil or criminal is the placement of the section in question—a decision made here by the legislature, not the code editor. Section 558.46 is in the chapter on conveyances, not in the criminal provisions of the Code. *See Kansas v. Hendricks,* 521 U.S. 346, 361, 117 S.Ct. 2072, 2082, 138 L.Ed.2d 501, 514–15 (1997) (finding that the state's objective to create a civil proceeding was evidenced by its placement in the probate code instead of in the criminal code). Notwithstanding this general rule, the Iowa legislature has placed *one* criminal provision in the conveyancing chapter. *See* Iowa Code § 558.40. However, it did so not by implication, but by clearly stating that a violation of that section is a crime. That section provides:

> Any officer, who knowingly misstates a material fact in either of the certificates mentioned in this chapter, shall be liable for all damages caused thereby, and *shall be guilty of a serious misdemeanor.*

*Id.* (emphasis added). If the legislature truly intended criminal sanctions for a violation of section 558.46, it should have included equally clear language.

In sum, we should never recognize a crime by inference or implication. As the Supreme Court has said:

> [W]hen choice has to be made between two readings of what conduct [the legislature] has made a crime, it is appropriate, before we choose the harsher alternative, to require that [the legislature] should have spoken in language that is clear and definite.

*United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 221–22, 73 S.Ct. 227, 229, 97 L.Ed. 260, 264 (1952). Before we conclude, as the majority has, that a violation of section 558.46 is a crime, we should await clear and definite language from the legislature stating as much. I would reverse.

CADY, J., joins this dissent.